

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 2 5 2017

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

| | | |
|---|---|---|
| WILLIAM O. DALE AND | § | |
| A. JAMES STREELMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:15-CV-825-A |
| | § | |
| EQUINE SPORTS MEDICINE & | § | |
| SURGERY RACE HORSE SERVICE, | § | |
| PLLC, AND DR. BOYD CLEMENT, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

For the reasons given in this order, the court tentatively has concluded that all claims and causes of action asserted by plaintiffs, William O. Dale ("Dale") and A. James Streelman ("Streelman"), should be dismissed pursuant to the authority of Rule 41(b) of the Federal Rules of Civil Procedure.[1]

Prefatory Statement

After having selected this court as the place to file their lawsuit, plaintiffs, within a few months after they filed it, decided that they would prefer not to have a trial in this court. Since then they have displayed an unparalleled level of intransigence in their efforts to avoid such a trial.

---

[1]Rule 41(b) contemplates that a dismissal under it will be on motion of a defendant. However, the court has inherent authority to dismiss, sua sponte, under Rule 41(b). See Link v. Wabash R.R. Co., 370 U.S. 626, 630 (1962); Jones v. Caddo Parish Sch. Bd., 704 F.2d 206, 214 (5th Cir. 1983).

As the Pertinent History of the Litigation set forth below discloses, plaintiffs first sought, in February 2016, a transfer of this action from this court to a court in New Mexico. When that failed, a few months later they unsuccessfully sought dismissal without prejudice, presumably so they could refile it in New Mexico. Plaintiffs persisted in their efforts to obtain a dismissal of this action without prejudice by the filing of an unsuccessful motion to reconsider.

Within a few days after this court denied the motion to reconsider, plaintiffs filed a lawsuit that was almost identical to this action in the United States District Court for the District of New Mexico, but made no disclosure to this court that the duplicate action had been filed. While the court hesitates to speculate as to exactly what plaintiffs had in mind by the filing of the duplicate New Mexico action, the most reasonable inference to be drawn is that the filing of that action was a part of a plan by the plaintiffs to avoid a trial in this court and to shift the venue to the federal court in New Mexico. Plaintiffs kept the New Mexico action alive on the docket there until plaintiffs were forced to dismiss it in February 2017 because of their failure to cause service of process to be made on the defendants.

In a continuation of their attempts to have their trial in New Mexico rather than this court, plaintiffs next filed a petition for writ of mandamus with the United States Circuit Court of Appeals for the Fifth Circuit seeking an order from the Fifth Circuit directing this court either to transfer this action to a court in New Mexico or to dismiss it without prejudice. When the Fifth Circuit denied the petition the day after it was filed, plaintiffs sought rehearing, which the Fifth Circuit promptly denied.

When this action went to trial on December 12, 2016, as set in the February 2016 scheduling order, plaintiffs conducted themselves in such a way that a mistrial was declared only a few hours after the trial testimony started. Following the mistrial, and before the court had an opportunity to obtain a record of the proceedings and to initiate appropriate action related to the events that led to the mistrial, plaintiffs, in what appeared to be an attempt to preempt action by the court, started a mudslinging campaign that they must have hoped would bring this action to an end in their favor without the need for a trial. The court concluded, and ordered, that none of the filings the parties made in December 2016 and January and February 2017 were meritorious other than perhaps the filing by defendants seeking sanctions related to the conduct that led to the mistrial.

In March 2017, the court scheduled the retrial of this action for April 17, 2017. Plaintiffs objected, assigning reasons why that date was not acceptable to them. When the court took into account in an appropriate way plaintiffs' reasons by rescheduling the trial for April 25, 2017, plaintiffs then assigned new and different reasons as to why April 25 was not an acceptable trial date.

Interwoven in the motions plaintiffs filed complaining of the trial date were allegations that the court was refusing to provide protection to one of plaintiffs' witnesses from a non-party to this litigation who, according to plaintiffs and their witness, was a threat to the safety of the witness and his family. After the court informed the parties that it had arranged for the protection of that witness by a deputy United States marshal during the retrial of this action, his safety no longer was assigned as a reason why this action should not go to trial on its April 25 trial setting, but new and different reasons were given.

When the court made known to the parties that the court was not going to grant another continuance, and that this action definitely was going to trial as scheduled on April 25, 2017, plaintiffs informed the court that they were not going to trial on that date. In other words, they informed the court that they

were not going to comply with an order the court issued on
March 30, 2017, rescheduling the trial for April 25, 2017, and
ordering plaintiffs, their attorneys, defendants, their
attorneys, and all witnesses who were to testify at the trial to
be present at the Fort Worth Courthouse at 9:00 a.m. on April 25,
2017, for trial.

By the notice given by plaintiffs to the court that they
were not going to comply with the court's March 30 setting order,
plaintiffs' intransigence culminated in a direct failure to
comply with a court order, and a clear cut failure to prosecute
their action as it should have been prosecuted. Therefore, a
dismissal of the action pursuant to the authority of Rule 41(b)
of the Federal Rules of Civil Procedure is appropriate at this
time for each of those reasons.

<u>Pertinent History of the Litigation</u>

A. <u>The Complaint</u>

This action was initiated on October 30, 2015, by the filing
by plaintiffs in this court of their complaint against Equine
Sports Medicine and Surgery and Dr. Boyd Clement ("Clement"),
complaining of veterinarian treatment Clement provided to Raw
Hide Canyon, a race horse owned by plaintiffs, which they alleged

ultimately led to the horse's death. Doc. 1.[2] Plaintiffs alleged that Clement was a veterinarian employee of the Equine Sports defendant, which was a licensed veterinarian clinic specializing in the medical care and treatment of race horses. Id. at ECF 1.[3] With leave of court, plaintiffs filed their first amended complaint on January 22, 2016, Doc. 19, making essentially the same claims they made in their original complaint, but changing the name of the Equine Sports defendant to "Equine Sports Medicine & Surgery Race Horse Service, PLLC" ("Equine Sports"). Doc. 19 at 1.

B.   The Joint Status Report and Scheduling Order

On February 19, 2016, the parties filed a joint status report. Doc. 23. Plaintiffs requested a trial setting in October or November of 2016, and defendants asked for a February 2017 trial date. Id. at ECF 2. On February 22, 2016, the court issued a scheduling order, setting this action for jury trial the week of December 12, 2016, and scheduling a pretrial conference for November 7, 2016. Doc. 24 at 2, ¶¶ 5 & 6.

---

[2]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:15-CV-825-A. Unless otherwise indicated, the page numbers following the "Doc. ___" references are to the page numbers on the referenced items.

[3]All "ECF ___" page number references are to the ECF header numbers at the tops of the pages of the referenced items. The ECF reference is used when the referenced item is not paginated.

C.  <u>Plaintiffs' Motion for Change of Venue</u>

On February 26, 2016, plaintiffs filed a motion for change of venue pursuant to 28 U.S.C. § 1404(a), alleging that most, if not all, factors to be considered in connection with such a motion weighed in favor of transferring venue from this court to the United States District Court for the District of New Mexico. Doc. 25 at ECF 8. Defendants responded on March 17, 2016, in opposition to the motion for change of venue. Doc. 26. The court's memorandum opinion and order denying the motion for change of venue was issued April 5, 2016. Doc. 27.

D.  <u>Plaintiffs' Motion to Dismiss Without Prejudice</u>

Next, on May 20, 2016, plaintiffs filed a motion to dismiss this action without prejudice, but with certain conditions being imposed, Doc. 31, to which defendants responded in opposition on June 9, 2016, Doc. 32. The court issued an order on June 23, 2016, denying the motion. Doc. 35. On July 28, 2016, plaintiffs filed a motion asking the court to reconsider its denial of the motion, together with a supporting declaration of one of the attorneys of record for plaintiffs, Docs. 37 & 38, to which defendants responded on August 16, 2016, Doc. 40. The court issued an order on August 16, 2016, denying the motion to reconsider. Doc. 41.

E.    The Duplicate New Mexico Lawsuit

The court learned for the first time from the contents of a document filed by defendants on January 23, 2017, that on August 24, 2016, plaintiffs filed a lawsuit in the United States District Court for the District of New Mexico that was almost identical to the instant action.[4]  Doc. 122 at 2, ¶ 4 & Ex. A. The record in the New Mexico action shows that as of January 11, 2017, plaintiffs still had not served either defendant with process in that action, Case No. 1:16-CV-00953-KBM-KK (D.N.M.), Doc. 3, and that plaintiffs did not take steps to dismiss the action until February 10, 2017, when they filed a notice of dismissal without prejudice, id., Doc. 4, apparently to avoid an involuntary dismissal pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, id., Docs. 3 & 4.

---

[4]So far as the court can determine, the only differences between the wording of the amended complaint plaintiffs filed in this action on January 22, 2016, Doc. 19, and the complaint they filed in the United States District Court for the District of New Mexico on August 24, 2016, Doc. 122, Ex. A, are the following: (1) the identity of the court at the top of the first page is different; (2) the title of the complaint on the first page is different; (3) paragraph 5 on the first page adds "New Mexico" as a state where Clement is licensed to practiced veterinarian medicine; (4) the word "Texas" in paragraph 49 is changed to the words "New Mexico"; (5) the elements of medical negligence and the supporting case citation in paragraph 50 apparently are changed to conform to New Mexico law and to provide support in a New Mexico court decision; (6) the definition of gross negligence and the authority supporting the definition are changed in paragraph 63 to refer to New Mexico law rather than Texas law; (7) a cause of action based on violation of the Unfair Trade Practices Act of New Mexico is added at pages 9 and 10 of the New Mexico version; (8) the date on the Texas version is January 20, 2016, and on the New Mexico version is August 24, 2016; and, (9) the Texas version has a certificate of service on its page 10 that does not appear on the New Mexico version.

F.   The Pretrial Conference

The pretrial conference was conducted as scheduled on November 7, 2016, Doc. 75, at which time the court issued an order requiring the parties to engage in final trial preparation activities, Doc. 78.

G.   The Petition for Writ of Mandamus

In the meantime, on November 1, 2016, plaintiffs filed a petition for writ of mandamus with the United States Court of Appeals for the Fifth Circuit, alleging that this court abused its discretion by denying plaintiffs' motion to transfer venue and by denying plaintiffs' motion to dismiss without prejudice and the subsequent motion to reconsider, and that this court failed to equally apply its scheduling order to plaintiffs and defendants. Doc. 66 at i (Table of Contents). The Fifth Circuit ordered the denial of the petition for writ of mandamus by an order issued November 2, 2016, and by the same order denied a motion plaintiffs had filed to stay further proceedings in this court. Doc. 67. Plaintiffs filed a motion for reconsideration with the Fifth Circuit, which was denied by an order issued by the Fifth Circuit on November 4, 2016. Doc. 79.

H.   Commencement of the Jury Trial

After the court and the parties engaged in rather extensive final trial preparation activities, Docs. 80-104, the jury trial

of this action commenced the morning of December 12, 2016. Doc. 105. It ended in a mistrial later that day. Doc. 106.

I.  The Mistrial and Post-Mistrial Filings Made by the Parties

The jury trial of this action that commenced on December 12, 2016, ended in a mistrial during the testimony of plaintiffs' second witness, plaintiff Dale. For the details of the events that led to the mistrial, the court here adopts by reference the contents of the first six pages of the order the court issued in this action on March 16, 2017 ("March 16 order"). Doc. 135 at 1-6. Suffice to say here, the mistrial was the result of non-compliance through both witnesses called by plaintiffs with an order of the court that insurance and settlement not be injected into the trial unless the court first authorized it. Id. at 2-6.

In the March 16 order, the court also discussed the numerous post-mistrial motions, responses, and replies the parties filed commencing on December 20, 2016, and continuing through February 28, 2017. Those motions, responses, and replies are described in a general way on pages 6-11 of the March 16 order, the contents of which are here adopted by reference. Id. at 6-11.

For the reasons explained by the court on pages 11-12 of the March 16 order, the court denied all relief sought by those post-mistrial motions, responses, and replies, except whatever relief

defendants sought by reason of the conduct that led to the mistrial. Id. at 11-12.

## J. The Post-Mistrial Setting Orders, and Plaintiffs' Resistance to the Orders

### 1. The New Trial Setting

By the March 16 order, the court ordered that a new jury trial of this action was to commence on April 17, 2017, and that on that date the parties, counsel for the parties, and all witnesses who were to testify at the trial were to appear before the court at 9:00 a.m. in Fort Worth for that purpose. Id. at 13. The court explained that it was not requiring new exhibit or witness lists and that it would consider all other filings made by the parties in advance of the December 12, 2016 trial date as part of the pretrial activities that would continue to be in effect as to the new trial, all subject to prior rulings of the court. Id.

### 2. Plaintiffs' Motion for Continuance

On March 23, 2017, plaintiffs filed their opposed motion for continuance, informing the court of alleged conflicts counsel for plaintiffs, plaintiffs' witnesses, and plaintiffs themselves had that plaintiffs said would cause an April 17, 2017 trial setting to be inappropriate. Doc. 136. They requested that this action be continued from its April 17, 2017 trial setting, and that it

be "reset . . . for trial at least 30 days out from the current April 17, 2017 trial setting." Id. at 4. Defendants filed on March 29, 2017, a response in opposition to the motion for continuance. Doc. 138. They informed the court that all of the defense witnesses had rearranged their schedules as necessary to be available for trial in accordance with the court's trial-setting order. Id. at 7, § VI. Defendants added that "[m]oving the trial again would cause undue financial and other hardships on Defendants, their counsel, and their witnesses . . . ." Id.

With no factual basis for the underlined part of the allegation, plaintiffs alleged in the motion for continuance that their "lead fact witness, Mr. John Stinebaugh," Doc. 136 at 3,

> has expressed that <u>this Court's refusal to provide him adequate protection or to take seriously the written threats to his safety and well-being</u> continue to give him cause to believe that he would suffer great bodily harm if he were to attend the trial and offer testimony and is unwilling to do so in light of the written threats convey [sic] at by [Joe Landers] . . . .

Id. at 3-4 (emphasis added).[5]

---

[5] In documents filed by plaintiffs on December 20, 2016, and January 18, 2017, plaintiffs introduced into this action a contention that one of their witnesses, John Stinebaugh, felt that an adversary of his in state court litigation, Joe Landers (who plaintiffs said was present in the audience section of the courtroom during the December 12, 2016 trial), was a threat to the safety of Stinebaugh and his family. Doc. 109 at 4-5 & Exs. A & A-1; Doc. 117 at Appx 3-Appx 11.

3. The Order Granting the Motion for Continuance in Part
   and Ordering a New Trial Setting

The court issued an order on March 30, 2017, granting

plaintiffs' motion for continuance, but not for the length of

time sought by plaintiffs. Doc. 139. The trial was rescheduled

to commence on April 25, 2017, and the court specifically ordered

as follows:

> The court ORDERS that the trial of the above-
> captioned action be, and is hereby, continued to
> commence at 9:00 a.m. on Tuesday, April 25, 2017, in
> the Fourth Floor Courtroom of the United States
> Courthouse, Fort Worth, Texas, at which time, date, and
> place plaintiffs, defendant Dr. Boyd Clement, a
> corporate representative of defendant Equine Sports
> Medicine & Surgery Race Horse Service, PLLC, counsel
> for the parties, and all witnesses who are to testify
> at the trial are to be present.

Id. at 2. The rescheduling of the trial to April 25, 2017,

accommodated all of the reasons given by plaintiffs in their

March 23, 2017 motion for continuance for not being able to

proceed to trial on the then-scheduled April 17, 2017 trial date.

Id. at 1.

4. The Renewed Motion for Continuance

Plaintiffs next filed, on April 4, 2017, a renewed motion

for continuance, this time asking the court for a continuance

from the April 25, 2017 trial setting, and requesting that this

action be reset mid-May. Doc. 140 at 2, § I. This time

plaintiffs provided different, and new, grounds for a

13

continuance, the most prominent of which was that "by the May trial setting the matter of the placement of the horse in the race of June 2013 will be fully resolved before the New Mexico Racing Commission." Id. All but one of the items in the appendix filed in support of the renewed motion pertained to that matter. Doc. 141, Exs. A-D. In other words, the main thrust of the renewed motion was that plaintiffs wanted more time for the development of new evidence for the plaintiffs. There was nothing in the renewed motion that the court considered justified rescheduling the trial.

In the renewed motion, plaintiffs against asserted, without the slightest basis in fact, that this court had refused to provide Stinebaugh adequate protection or to take seriously the written threats to his safety and well-being. Id. at 4.

5. The Denial of the Renewed Motion for Continuance

The court issued an order on April 4, 2017, denying plaintiffs' renewed motion for continuance, explaining that:

> The continuance sought by the renewed motion appears to be highly inappropriate considering the fact that the trial of this action commenced on December 12, 2016. The parties should be ready for trial, and the court expects the case to go to trial on its current setting. And, the court expects the parties to comply with the court's directives relative to trial conduct.

Doc. 142 at 2.

In the April 4 order, the court took note of the incorrect assertions twice made by plaintiffs that this court has refused to provide Stinebaugh adequate protection or to take seriously the written threats to his safety and well-being. Id. at 2 n.1.

6.   The April 13 Order Re Potential Witness Protection

Even though the court had misgivings concerning plaintiffs' assertions that Stinebaugh had a concern for his safety if he appeared to testify during the trial of this action, the court informed the parties by an order issued on April 13, 2017, that the court had arranged for a deputy United States Marshal to assist in providing security to Stinebaugh when he appeared to be a witness in this action, while he is in the courthouse, and during his departure. Doc. 143 at 1.   The order described the procedures that were to be followed if Stinebaugh wished to avail himself of those services. Id. at 1-2.

K.   Plaintiffs' Announcement of Intent Not to Comply With the March 30 Setting Order

1.   Notice of Non-Appearance

Upon receipt by plaintiffs' counsel of the April 13, 2017 order, they prepared and put in FedEx Express to this court a document titled "Notice of Non-Appearance and Motion for Protective Order," which this court received the morning of April 14, 2017. Doc. 146.  In that document, plaintiffs

announced to the court that they "hereby enter[] their Notice of Non-Appearance to the Trial set to occur on April 25-26, 2017." Id. at 1. The document, which appears to have been hastily drawn, also included a request for a protective order by placing reliance on the discovery rule found at Rule 26(c)(1) of the Federal Rules of Civil Procedure, which has no potential applicability.

Plaintiffs added for the first time as a reason why they could not participate in an April 25, 2017 trial that plaintiff Dale, who was the second of two witnesses who gave the testimony that led to the December 12, 2016 mistrial, had physical impairments that would prevent him from attending trial. Id. at 2-3. There was no suggestion as to when in the future his condition would permit his presence at a trial. Id. The Dale ground for continuance seems to have replaced the ground based on Stinebaugh's alleged need for protection, which was not mentioned in plaintiffs' April 14, 2017 filing.

   2.   Order Seeking Clarification of the Intent of the
        "Notice of Non-Appearance"

On April 14, 2017, the court issued an order informing the parties that the court interpreted plaintiffs' notice of non-appearance "to be a statement that plaintiffs do not intend to comply with the court's March 30, 2017, order pertaining to

trial," Doc. 147 at 2; and, the court ordered plaintiffs to file a document by April 18, 2017, informing the court whether the court had correctly interpreted the notice.

3. <u>The Notice of Clarification of Non-Attendance to Trial</u>

While not directly complying with the directive of the April 14, 2017 order, on April 18, 2017, plaintiffs, through their counsel, filed a document that the court took to be a confirmation that they did not intend to comply with the court's March 30, 2017 order requiring plaintiffs' counsel, plaintiffs, and their witnesses to appear before the court at 9:00 a.m. on April 25, 2017, for the trial of this action. Doc. 148. Plaintiffs advised that one of their attorneys, A. Blair Dunn ("Dunn") "plans to be in attendance on April 25, 2017, despite the undue burden that it places on his other clients, his obligations to other tribunals and Plaintiffs in order to apprise the Court of the proffers they would like to make for the record as Plaintiffs <u>will be unable</u> to present their case at trial on April 27, 2017." <u>Id.</u> at 2. This time the delay plaintiffs sought in a trial date was "a delay of 30 or 60 days to allow the parties and their witnesses to adequately schedule for a trial . . . ." <u>Id.</u>

L.  Court's April 20, 2017 Order

On April 20, 2017, the court issued an order confirming the court's interpretation of the document filed by plaintiff on April 14, 2017, to be that plaintiffs were not going to comply with the court's March 30, 2017 setting order, and informing the parties that, for that reason, the court did not plan to have a panel present from which a jury could be selected for an April 25, 2017 trial, and informing counsel for defendants that they, their clients, and their witnesses were not required to be present for the trial of this action on April 25, 2017.

The court took note of the statement in the "clarification" document plaintiffs filed April 18, 2017, that Dunn planned to be in attendance on April 25, 2017, to make proffers for the record; and, the court informed the parties that there was no need for Dunn to be in attendance on April 25, 2017, to make proffers because plaintiffs had already made their proffers in their written filings and the court had already determined that the proffers did not justify plaintiffs' violation of the March 30, 2017 trial-setting order.

No one appeared for trial on the date of the signing of this order.

The court informed the parties by the April 20, 2017 order that plaintiffs' conduct constituted a failure to prosecute this

18

action, within the meaning of Rule 41(b) of the Federal Rules of Civil Procedure, and was a failure to comply with a court order, within the meaning of that Rule, with the consequence that this action is now subject to involuntary dismissal, as contemplated by Rule 41(b).

## Conclusion

While the court is satisfied that the refusal of plaintiffs to comply with the March 30, 2017 trial-setting order, without more, is sufficient reason for dismissal of this action pursuant to the authority of Rule 41(b), the court has included in this memorandum opinion and order a description of pertinent events in the history of this litigation to provide the setting and context existing in this action when plaintiffs notified the court of their intent not to comply with the trial-setting order and when this court tentatively concluded that all claims and causes of action asserted by plaintiffs in this action should be dismissed.

Presumably, plaintiffs already have disclosed to the court in their filed documents the reasons they wished to assign for their decision not to comply with the March 30, 2017 setting order; and, the court already has considered and found unpersuasive all of those reasons. Nevertheless, if plaintiffs wish to have a hearing relative to any of the facts stated or

conclusions expressed in this memorandum opinion and order, the court will afford them such a hearing.

ORDERS

Therefore,

The court ORDERS that by 4:00 p.m. on April 28, 2017, plaintiffs file a document in this action informing the court whether they wish to have a hearing relative to any of the facts stated or conclusions expressed in this memorandum opinion and order. If plaintiffs fail to inform the court by such time and date that they wish to have such a hearing, the court will make a ruling based on the information it now has.

The court further ORDERS that if plaintiffs timely inform the court that they wish to have such a hearing, the hearing is to be held at 10:00 a.m. on May 8, 2017, at which time and date the parties, counsel for the parties, and all witnesses who are to testify at the hearing are to be present in the Fourth Floor Courtroom of the United States Courthouse, Fort Worth, Texas.

The court FURTHER ORDERS that as to any witnesses and exhibits to be offered at the hearing:

(1) By 2:00 p.m. two business days before the hearing all parties shall file a hearing witness list and exhibit list.

(2) The parties shall not file exhibits prior to the hearing, but shall have the originals and one copy thereof available immediately prior to the hearing. Each exhibit that will be offered at the hearing shall bear the case number of this action in addition to the exhibit number and identity of offering party.

(3) The witness list shall be accompanied, when it is filed, by a statement as to each witness of each subject matter upon which the witness will be asked to testify. The witness list shall include one column bearing the heading "Sworn" and another bearing the heading "Testified" to help the court keep track of the witnesses at the hearing.

(4) The exhibit list shall be accompanied, when it is filed, by a statement signed by counsel for each party, other than the party who will be offering the exhibit, stating as to each exhibit shown on the list either that the parties agree to the admissibility of the exhibit or the nature and legal basis of any objection that will be made to the admissibility of the exhibit and the identity of the party or parties who will be

urging the objection.[6]  All parties are required to
cooperate in causing such statements to be prepared in
a timely manner for filing with the exhibit lists.  The
party proposing to offer an exhibit shall be
responsible for coordinating activities related to
preparation of such a statement as to the exhibit such
party proposes to offer.  No exhibit will be offered at
the hearing unless such a statement has been timely
filed as to the exhibit.  The exhibit list shall
include one column bearing the heading "Offered" and
another bearing the heading "Admitted."

(5)  No party is permitted to adopt as, or in, the party's
witness list or exhibit list all or any part of the
witness list or exhibit list of another party.

SIGNED April 25, 2017.

_____
JOHN McBRYDE
United States District Judge

---

[6]The court does not expect evidence will be received at the hearing by affidavit or declaration
unless prepared as an exception to the hearsay rule consistent with a provision of the Federal Rules of
Evidence.